The next case is Pablo Guevara v. NCL. Mr. Parrish is here for Guevara, Mr. Ross for Norwegian. Mr. Parrish, you may begin when you're ready. Good morning, may it please the Court, Philip Parrish, on behalf of the appellant, Plaintiff Pablo Guevara, seated to my left, is Trial Counsel Tanya Meister. We've raised two issues in the brief, but with the Court's permission and guidance, we're going to focus on the principal issue of the granting of the summary judgment, and if time permitting, or if the Court's interested in, discuss the discovery issues thereafter. So we're here on de novo review of a summary judgment order in which the standard is that the District Court was supposed to look at the facts and the like most favorable to the non-movement, Mr. Guevara, and construe all reasonable inferences in favor of the non-movement, Mr. Guevara. Unfortunately, the District Court did the exact opposite, specifically with respect to a crucial issue in the case, a crucial issue in every maritime personal injury premises liability, if you will, case, which occurs on these cruise ships, which is the issue of notice. Judge Pryor, I believe you were on the Pizzino panel, so it's even more important, as the District Court noted, post-Pizzino, and Pizzino came out about a week before our oral argument on the summary judgment motion in this case, that we must establish notice. Now this Court, in two decisions, has held that when a cruise line, such as NCL, sets out a warning sign or a warning cone of some sort, that is evidence of constructive notice. If you put out a cone because it's been raining, Sorrells and Frasca in particular, Sorrells was putting out rain cones, there was testimony that if you put out a warning for one thing and the accident results from a combination of things. Well, so, then, I think that goes again to the jury. The accident here is put into motion by this unexpected single-level step that occurs, yes? Well, the reason I'm asking the question is it seems pretty obvious that this was a function of it being dark, the light being out, and it being wet, whereas the sign is about the step. Well, I understand the question, but the single factor that began this process and began the problem which resulted in the injury is the missing of the step. Now the missing of the step is whether it was unexpected. Once he misses the step, then he can't, there's also some wetness there, which may have resulted in him being unable to gain his balance. But if he sees the step, then he doesn't lose his balance in the first place. So, the issue that we're focusing on is the notice sign, which, by the way, NCL's own corporate representative, therefore NCL itself, recognized and used as a defense that we did, in fact, warn you of this danger of the unexpected change in elevation. That was their testimony, that they're relying on that sign. And then their expert relies on that sign. And then the district court weighs the evidence and says, well, I don't believe that sign goes to the change, that single step change in elevation here. I believe it only applies to these three steps coming up to the post. That's the district court weighing evidence in a fashion that the district court is not entitled to do, particularly when we have a concession from NCL itself and from NCL's liability expert that this sign was, in fact, our discharge of our duty to warn. Again, we alleged failure to warn. They filed an affirmative defense saying we did warn. They answered interrogatory saying we warned. We then took the corporate representative's deposition, Jane Kilgore. I mean, technically speaking, they're saying the sign warned because they don't, there's no evidence that they put the sign up. Well, well, so the sign's been on their vessel the entire time they've had the vessel. So that's another area where the district court, I think, weighed the evidence against the non-movement in favor of the movement. And that issue didn't even arise until their reply, when they filed their reply to their motion for summary judgment, and they said, wait a minute, you didn't prove that we put the sign there. Well, why would we need to prove that you put the sign there? You've had the vessel for over 10 years. It's been in dry dock twice. It's a permanent sign. You obviously have accepted this sign, and it's there, and you can read, so therefore you know that the sign's, if the sign doesn't need to be there, take it down. But that's on the vessel, and they didn't raise the issue of whether we had proven that they put it on until their reply. So again, the district court, in all of these instances, was looking at the record in a light least favorable to the non-movement, in a light favorable to NCL, and I think this court's opinions in Sorrell, in Frasca, as well as Tyrol. In Tyrol, a case where I was representing the appellant. Because of the sign, the step down would be open and obvious to a reasonably alert person if the light had been working, if the light bulb had not been working, right? Well, not necessarily. The sign might not be sufficient. So is the sign sufficient? Because the district court, keeping in mind, said, well, I don't think that sign applies to the step down. Maybe the sign should have said, watch your step. There's an additional step beyond these three steps. Maybe there should have been some lighting on the step down. So the sufficiency, what Frasca says, what this court said in Frasca, is once there is some type of notice and there's a warning, the sufficiency of that warning is an issue for the jury. We had dueling experts, Dr. Sala on the defense and Dr. Zollo for the plaintiff, saying, yes, it was or was not sufficient. So it's not an open and obvious situation. And I think the absence of the light bulb, it can be viewed in two ways. Is it something they needed to warn about? Or is it a piece of evidence that explains why it wasn't open and obvious to Mr. Guevara? It cuts both ways. In this case, it's certainly, it's right above where that sign is. It's the bulb on that post where the sign is. So it helps to explain, perhaps, why their defense, and the district court didn't get to that because she held that there was no notice to NCL. If we got to that defense, it wouldn't be something that they could prevail on because the light bulb's out. And that doesn't require them to have any notice of the light bulb. I guess I'm a little concerned about the light bulb being out and, you know, whether or not there was evidence to establish active or constructive notice of the light bulb being out. There's a duty to warn of a possibly dangerous condition. It was a sign that said, watch your step. And so I guess what I'm concerned about, is there any evidence establishing that Norwegian had actual or constructive notice of the fact that the light bulb was out? No, there isn't. And our position is there's really no evidence that they didn't either. So here's what the district court relied upon, and here's what NCL relied upon. They had their corporate representative testify. I spoke to someone on the ship. They told me that what they do is they have a crew of engineers that goes by twice a day or twice an evening to check throughout the ship, and there were no reports on that. Well, okay, where's the policy that says that's what you do? We don't have a written policy. Where's the log that says that they did that on that day? We don't have that. What are the names of the engineers who did that? We don't have that. So they came in and said they've got a policy of checking it, but there was really no, there was certainly no written evidence of that, and we suggest that there's an inference here that this was 11 o'clock or so at night. The light bulb could have been out for four or five hours. We know 45 minutes after it, it still hadn't been replaced. And on a negligent maintenance theory, maybe they need to make sure that they're changing their light bulbs on a schedule versus, you know, waiting to see whether they go by. But putting aside the light bulb issue, we believe that the summary judgment has to be reversed on a step issue. So the answer to my question is there's no evidence in the record that would establish that Norwegian knew that the light bulb was out when he stepped down? How could we possibly have that evidence? If they don't admit it, how could we possibly have evidence that they knew that the light bulb was out? So... Or you can depose the people who inspect, who said, yeah, we saw the light bulb out and we failed to, and we failed to timely put it back in. Well, that gets to the issue of they never provided us with the names of those people so that we could depose them. You obtain all that, you can obtain that information through discovery, you can depose the people. There are nightly inspections, as I understand it, right? That's what they say, yes. But let me, and we were not ever given the names of those people to depose, and time ran out on discovery. But, so this case could be reversed on the sole danger of the step, the single step, which is like the single step in Tyrol. Those are more dangerous than regular steps because you don't expect them. We had... Norwegian has a duty to warn, and they warned, there was a sign that said, watch your step. But is it sufficient? It's not, it's not a sufficient warning. I mean, there was, there was testimony, I mean, the district court thought that the sign doesn't even apply to that single step. So if it's... It would be sufficient if the light bulb was working to illuminate the sign. Even assuming, let's, let's put the light bulb aside, let's just say the light bulb is working, and he sees that sign, that sign, if he may think that sign, I'm sorry. There's any evidence in the record to establish that they knew that the light bulb was out, and if they knew the light bulb was out, there would be, you know, there'd be liability on the part of Norwegian. Right. Well, again, we don't have any evidence because we were not ever provided with any information to depose anyone, and that goes to the second issue on discovery, which is that we were not, we were not permitted to take that discovery. The, there was a hearing after the 30B6 deposition. They were supposed to provide us with the names of the, of the people who were doing the engineers, and they didn't, so at the very least, we should be permitted to go take those depositions. But again, the fact that the light bulb is out, in my mind, goes mostly to his lack of an open and obvious. We still have a warning sign that it's ambiguous as to whether it applies to the step afterwards. In fact, the district court ruled that it didn't. She weighed the evidence and said it didn't apply to that step. So, you know, and Frasca says, once there's a, there's a warning given, whether or not it's sufficient, whether or not it applied to the step afterwards, after the landing, which by the way was too short, whether it applies to that is a question for the jury. So on the basis of Sorrell's and Frasca, and we, and we believe that the district court erred in granting summary judgment. All right. We have your argument. Thank you, Mr. Parrish. We'll hear from Ms. Ross. Thank you, Your Honor, and may it please the court, Laurie Waldman Ross on behalf of NCL, together with me at council table is Noah Silverman. First I want to talk about what this case is not. This is not a defective construction or design case. The entire issue in this case turned on the issue of notice. And when questioned at the summary judgment hearing, the court asked, because half of the response to the summary judgment was that they didn't have to prove notice. And that was pending at the time Pazino came out, and the reason why they said they didn't have to prove notice is we created a dangerous condition. That Pazino came out on September 20th. We gave notice of supplemental authority. The oral argument was heard one week later in front of the trial judge, and she says, Pazino really changes the posture of this case because you've got what is the theory of your case. It can't be that you don't have to provide constructive notice or actual notice. And the answer to that question of what is the theory of my case is found at the record at page 162. It's the summary judgment hearing. It's page 29. And the answer is, it's a combination of factors. And this is Mr. Parrish, page 27, Your Honor, because she's saying, you're trying to get a case. That is simple. They didn't warn it was slippery. They didn't warn of the step-down. She said, you're conflating a bunch of issues. And Mr. Parrish responds, this is a case where there are a combination of factors that caused the injury. So let me start backwards, okay? A, there is no notice to anybody that the light bulb was out. The plaintiff testified he didn't know whether it went out one minute before or one hour before. The testimony in the record was that four engineers inspected twice a day for the lighting issues once in the morning. Can I, I'm sorry to interrupt, but just to make sure I'm understanding how this constructive notice and actual notice works. So the part that's easy for me to understand is you have some water spills, the cruise liner puts up the cones, so now they're on notice and now they have to behave reasonably with respect to this danger. What I'm struggling with is how this works when you have a ship that has pre-existing signs like this, we'll assume that's what happened here for the sake of argument. And so what would happen in the case if the sign had said, hold railing, watch step, there's seven inches down, sometimes the lights go out and sometimes it's wet. I take it that the way this admiralty law works is now you're on notice and so even though you've given all the notice, you're now liable? That is what the plaintiff's position is, is anytime you have a sign that gives notice, anytime you give... Maybe that's right. Maybe they're right. I don't know how this works. Well, first of all, if you look at the sign cases that he's referring to, remember it's notice of the risk creating condition to the plaintiff. That's the notice. It's not notice of an object. It's notice of a risk creating condition to the plaintiff. You can have notice because you just... Someone called and said there's something going on and you can have constructive notice because it's obvious these things could happen on a ship that could get wet. If it's obvious, there's no duty to warn, okay? That's clear maritime law. So you don't have to give notice. You only have to give notice of things that are not open and obvious. But in this case, his two theories, negligent maintenance and negligent failure to warn, converged because this was not a temporary condition. That's why I said I wanted to start backwards because the two cases he relies on, Frasca and Sorrels, are both cases in which there was either a tape or the warning cones put up about the risk creating condition, which was the deck is slippery when wet. And there was either rain or water emanating from a source that caused wetness that put them on notice. So you had coupled with, they knew, the cruise line knew that a temporary condition could occur, that this particular deck could become slippery when wet, and they either put out cones in a situation to give notice of that temporary condition, or they played a video to warn the passengers of what occurred. In this case, however, first of all, with regard to the wetness, NCL had no notices to the wetness. Let me, because I say, let me set the scene, it has not rained all day. And the plaintiff says, it's clear it never rained, it's clear at the time of his incident, it had never rained all day, the pools were closed, the hot tub was closed. And what he saw, he didn't see any wetness when he fell. When he got up, he noticed a sheen of water across where he fell. There's no notice to NCL that there's water there. It's not a temporary condition. The notice that's attributed to this staircase, which we say is going up because it has a handrail, that notice isn't attributed to a wet spot in which he claimed he slid in. There's no notice of that. So when I say his theory is there's a combination of factors, it's not merely a step down. It's, he has a combination of factors he's alleging caused the injury, of which at best, the sign goes to one, not three. Well, how would this come out if he said, fine, I'm getting rid of the water, I'm getting rid of the light bulb, it all comes down, because he does say or in the complaint, I think. So he says, it's a step down problem. You had noticed the step down problem, see the sign, and I broke my arm because of the step down problem. Let's take water and light out of it. That's an open and obvious condition and or there was a warning along the sign. But I agree, it does not apply to the step going down, it applies to the step going up because the handrail, it says, hold for your own safety, hold handrail. There is no handrail where the step is going down. And if you look at the pictures, there's a step on either side. This was the design of the ship. So you're saying, just so I'm clear, so you're saying that the warning does not apply to the step down. Correct. It applies to the stairs going up that have the handrail. Correct. And that as a matter of law. So you're relying on the fact that the step down was open and obvious, not that you warned about it. Yes, yes, I am. But again, the new issue, which is essentially what he's saying is it's a disguised optical illusion. We have no notice of a disguised optical illusion. There were no incidents, no accidents, no claims. It's an illusion. But for somebody to say it's an optical illusion after the fact, I looked at it and I couldn't see. There's still, you would expect if this was a dangerous condition of which we had notice of, somebody, somewhere would have slipped and fallen, filed a claim, filed an accident report, something. It's undisputed in this record. There's nothing. There's nothing. Nobody slipped. And the magistrate judge . . . But what makes this different though is that the light bulb was out so you couldn't see the signs. Well, that's . . . If the signs satisfied Norwegian's obligation to warn, there may be liability on the part of Norwegian for failure to maintain lighting so that its passengers can see the signs, which Norwegian says satisfies its duty to warn its passengers. And so my question is, could not discovery uncover liability on the part of Norwegian for failing to make sure that the light bulbs work? If there had been a motion to continue discovery, if there had been a motion to extend the time period for discovery, if there had been a motion to defer on the motion to summary judgment, which the trial court could have done, I might agree with that. But I don't because there wasn't one procedure under the rules that the plaintiff availed themselves of in this case. Not one. And if you look at the reason why their expert report was stricken, each time the expert, their expert was hired eight days before he issued his tentative, quote, preliminary report. His preliminary report said nothing about lighting conditions. What it said was, I assume that the light bulb was out and I assume . . . and that evidence will show whether or not in the future, it remains to be seen whether or not the product is slippery or not. He never inspected the ship. He never tested the materials. So his testimony was stricken for unrelated. If you look at record 127 and 111, the magistrate judge and the court spent a great deal of going through the expert's opinions and what he did in this case. And you will see, the first preliminary report is assumption, assumption, assumption, no facts. And then our expert issues an opinion and the opinion pertains solely as to lighting. And everything as to lighting is, he actually tested the lighting night and day. There are pictures in the record where the light bulb was out on one side, then he tested it with a light bulb out on the other side, then he tested it with all three lights on and there was no distinguishable difference. There was some other lighting that he described in his report. And his entire report went to his inspection of the ship and it didn't make a difference with regard to ability to see. So what comes back is a rebuttal, a quote, rebuttal report in which the expert, who is not prevented in any way from finding out information as to lighting, not in any way whatsoever, an expert report which ended up getting stricken because it had a whole bunch of new materials with regard to lighting that criticized our expert's report and a whole bunch of new standards. That's one of the reasons. The second reason is, and this is a red herring but I do want to address it, it's his second expert report, they talk about the fact that the bolete testing was not turned over, which is slip resistance. I just want to make it clear, our expert never did a coefficient of friction test. It's not, he didn't offer, in his expert opinion, he didn't offer any opinion on slip resistance. What we got back was two supplemental reports, this is the area that they claim they didn't get discovery on, is they didn't know about a coefficient of friction test. The coefficient of friction test that they are talking about was one provided by the manufacturer in 2012 testing a sample of the flooring which showed that it met slip resistance. It was not tested on the flooring at the time of this accident. It's a manufacturer's sample. It's not something we did. Our expert offered no opinions on slip resistance. What did we get? We got a month and a half after the deadlines, we got a supplemental report with new opinions on slip resistance, which they were not prevented, which we had not presented any expert opinion testimony on, and there was no request by the court to reopen or to allow this supplement to extend the time period to permit it, and that got stricken. So what we're down to in this notice issue is we're down to arguing whether a sign, when you put up a sign, does the sign obtain and apply to all conditions, which is what the plaintiff's position is. It looks like there's some evidence in the record that, from your client, that the warning sign did pertain to the step down. The 30B6 witness was asked, what steps were taken by the cruise line to draw attention to the transition between the landing and the fake steep decking where Mr. Boyer fell, and the witness answered that the steps included having the warning sign. Doesn't that create an issue of fact? It does not create an issue of fact with regard to that because she's talking about a generalized warning. A generalized warning, no different than in Tyrol and Gorsuch with regard to watch your step. Watch your step. That does not mean we recognize there is a dangerous condition from the backside by virtue of an optical illusion, and we are giving warnings to that. And that's what- Your expert also- It says the area. Was asked what the sign pertains to. Is it pertaining to the transition on the other side, and the witness said, I believe that it pertains to the area. The area, which is, and again- Couldn't a jury conclude that that's talking about the step down? No, because there's still, no matter what they said, first of all, the expert would just be an opinion. There's no evidence from anybody. Remember, we didn't construct the ship. We didn't design the ship. We didn't affix the sign. We did not affix the sign. The sign was on the ship at the time. So the question is, was there any evidence in the record with regard to the reason for this sign? None. The reason why it was posted? None. All they're saying is, we adopted it by virtue of the fact we allowed it to exist on the ship. If you adopt that, that is contrary to all of the law, which is well-centered, that an operator- Your view, just to make sure I understand it, is if the manufacturer's sign was referring to the step down, is your view that, so be it? The only way my client can be liable is if we've had notice of an incident, an accident happening. Because once we have notice of that, we now have to do something. Yes. You would say, in the abstract, even if the sign refers to the step down, even if it's dealing with this exact risk that actually happened, you can't be held liable for that because that was the way it was bought, and that's what you did. That takes it one step further than what my argument is. My argument is, no, we can't, it's one or the other. My argument is that it's open and obvious, and we gave a warning, which is on, and that's what we were required to do. But alternatively, assuming that it applied to the step down, it applied to the step down, without notice that that step down had ever been a problem with anybody, that that was just a generalized warning. And that's all it could ever be. And under both Tyrell and Gorsica, it can't just be a warning of the fact that the steps are there. Those were both watch your steps in which somebody had, in fact, slipped on, not the step itself, but the covering of the step, which they said was slippery. And this court said, a watch your step sign is not sufficient notice that the step was slippery. And that's two recent cases in 2017. And I see that my time is up. For all of the reasons we've submitted, the only result should be affirmance. Thank you. All right. Thank you, Ms. Ross. We'll hear from Mr. Parrish again. Thank you, Judge Pryor. Getting to the question that you were posing to NCL, they were asked specifically, the corporate representative. Here's the question. I'm asking specifically, what draws your attention to this step down in the area? And she says, there is. And then she's interrupted. Other than the sign. Because, again, we were trying to suggest you weren't actually discharging your duty to warn. But then she says, OK, the sign that says to watch your steps. So the question was, what specifically draws your attention to this step down? And she says, the sign that says to watch your step. Tyrol. So that's from their own corporate rep. That's their own position. NCL's position is, this sign applies to this danger. And NCL says that their experts' opinion is just an opinion. It's evidence. It's the best kind of evidence. It's evidence from their experts' mouth that this warning sign is intended to warn of the step beyond. And the district court. So just to make sure I'm getting this, because I'm just not sure I am. I wanted to get to that. Let's just take it out of these facts. And it's a watch your step sign, but let's say it's a little more specific. So watch your step, it's a longer drop or something. So they're quite specific about it. It comes with the ship. There's no evidence that the cruise liner added the sign. And so I get the idea that if people are falling, they're injuries, now they're on notice and they need to do more than that sign. But I take it your theory of the case is, listen, the manufacturer knew about this problem. You now know about it because it's got this sign. So even the first person that doesn't watch their step, they're liable because they, or at least it goes to a jury. It can be liable. At least it goes to a jury because they were on notice because they would have seen the sign low these 10 years. Correct. That's how it works. And understanding that. I just don't understand how that doesn't pull you into their becoming a general insurer. I thought that was the whole forbidden zone. No, because, and the question that you asked Ms. Waldman-Walsh was, does that make you automatically liable if you do provide the notice? It doesn't. What it does mean is that you cannot get a summary judgment on your defense of lack of notice. No, that's not what I meant. It makes you automatically on notice. On notice. But then the question is, is the warning sufficient? And that's a question, which as court said in Frasca, is a question for the jury. Now in Tyrol, the issue was whether the nose was slippery or not. And this court said that, and we were trying to argue that the watch your step went to the slipperiness of the nosing of the step. And this court said it doesn't do that. It said common sense dictates that the sticker served to caution persons on the ship that the step was there. That is, it warned passengers that the surface was not flat. So here, it clearly, well, there's a dispute as to whether it applies to this step down. They say it does. The district court found, as a finder of fact, which is not permitted to do on a motion for summary judgment, that it does not. And the question becomes, is it enough? Should there have been a picture of three steps up and then one step down? Should there have been a watch your step, including the additional step past the landing? So the issue of whether the warning was sufficient goes to the jury. That's what this court said in Frasca. Once it's established that there is a warning and there's a question of fact here as to whether it applies to the step down in addition to the three steps, and the district court did not view the evidence to lay it most favorable to the plaintiff. So the theory that we would ask that you remand on is the theory that it was the step. Your Honor, Judge Sutton is correct that we pled and or. I may have said, let's look at all of this at the oral argument, but when an attorney says an argument, it's not the law. And my co-counsel, Mr. Guilford, came up behind me and said, no, we look at these individually. So I'm saying today the court, we pled and or. The wetness of it might be a factor that plays into how he got injured, but it all got started with the misstep, which I think the pictures of it show in daylight that it's difficult to see. This obviously occurred at night and with a light out. But the issue is, are they on some kind of constructive notice under Frasca and Sorrell's? This is a permanent danger, and therefore a permanent sign versus a temporary danger and a temporary sign like you might have had in Sorrell's. And it doesn't mean they're liable, Judge Sutton, it just means they don't get a summary judgment. So we'd ask that the court would. So the cruise ship would still have other defenses, they just wouldn't be able to say they weren't on notice as a matter of law. Correct. Thank you, counsel. The court is in recess until 9 o'clock tomorrow morning. Thank you. All rise.